## CAMPBELL vs. MILLER.

APPEAL from the court of the sixth district.

MARTIN, J. delivered the opinion of the court. The plaintiff complains that the defendant has unjustly deprived him of two slaves, of whom he had been for a long time in quiet possession, as owner. He prays that the latter may be decreed to deliver them back and

If the case turns on the identity of property in the defendant's possession, which he refuses to let the witnesses see, and there be a verdict in his favor, the court will remand the cause for a new trial.

pay damages, and that, in the meanwhile, they be sequestered.

West'n District
Sept. 1823.

CAMPBELL
vs.
MILLER.

The defendant pleaded the general issue and that he might be quieted in his possession

In an amended answer he pleaded, that if the slaves ever were the plaintiff's property, they have ceased so to be, and were by him or his agent sold, and he received payment therefor.

The affidavit of a juror not admissible to impeach the verdict.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

The statement of facts shews that —

Patton deposed, that in 1818, he was the plaintiff's overseer for a month. He knows the slaves claimed, Paul and Brandon, whom the plaintiff brought to his plantation. Paul was black and chuncky, about 25 or 30 years of age. He does not recollect him as well as Brandon, who was 35 or 40 years old, his color black, inclining to yellow; he had a heavy beard, and complained of rheumatism. The witness went to Natchez and brought the slaves hence. A few days after he went to live with the plaintiff, and has not seen them since he left him.

Ruton deposed, he was the plaintiff's overseer in 1822. Brandon is nearly jet black,

40 or 45 years old, 5 feet 6 or 8 inches high—Paul, jet black, 30 or 35 years old, nearly 6 feet high. These negroes, with three others, disappeared on the 11th or 12th in the evening. He left the plaintiff a few days after, and has not seen the negroes since. Last fall he went with the plaintiff to the defendant's. The latter said he had two negroes answering the above description, but refused to let the plaintiff see them, as he was told it would injure him. He added he would hold them as long as he could, as a Mr. M'Donald had behaved improperly; but, if the plaintiff had come himself, he would have acted differently. The negroes were able bodied; the two worth 28 dollars a month, exclusive of clothing, in the state of Mississippi.

Flannin deposed, that about three years ago, he saw these negroes in the possession of the plaintiff. He saw them very often since, [but they absented themselves in the spring of 1822] in the plaintiff's possession. Collier was the plaintiff's overseer in the fall and winter of 1821 and 1822, and was discharged at the end of the winter. The plaintiff has a farm and about 80 negroes, on Pine Ridge, in the state of Mississippi.

Manfro deposed, he could not describe the slaves, but they are those purchased by the defendant from Collier, called Paul and Brandon. He did not particularly attend to the description given by the preceding witnesses, but he could not recognize them under it, except that they are black. Paul is from 40 to 45, and Brandon about 30 years old.

M'Daniel deposed, that he had seen Collier in Alabama, two or three years before. He was worth about 20 000 dollars, and bore a good character. He knows that some of the negroes sold by Collier, came to him from his father. Negroes would have been worth about 260 dollars per year.

Henderson deposed, that Brandon was not exactly right black; 5 feet 5 or 6 inches high, appeared to be above 30. He did not take particular notice of Paul, who seemed advanced in years, apparently drooping and moving slowly. Negroes would be worth 180 dollars, exclusive of expenses. They were purchased in good faith. The witness gave a draft for 250 dollars, as part of the purchase money.

The defendant gave in evidence, his note for 950 dollars to Collier, endorsed to M'Daniel.

West'n District
Sept. 1823.

CAMPBELL
vs.
MILLER.

It appears that the plaintiff moved for a new trial, on the ground that—

1. The verdict is against law and evidence, in being for the defendant, who exhibited no title.

2. The plaintiff was taken by surprise, by the production of the note to Collier, as if it had been offered earlier, he could have rebutted the suspicion of collusion arising from it.

3. One of the witnesses stated, incorrectly, that the slaves ranaway in *April*, instead of *March*, 1823.

4. Complete justice was not done, nor can it be, without the production of the slaves in court, to establish the idenfity.

5. One of the jurors, Scott, after they had retired, communicated certain facts to the others.

There is nothing in the first ground taken. The plaintiff could not expect a verdict, even when the defendant produced no title, if he did not himself establish a good one, or his right of possession, and identify the slaves. We think that the affidavit of a juror is not admissible, to impeach the verdict on account of misconduct—4 *Binney*, 150.

The defendant stood under no legal obliga-

tion to produce the slaves to the plaintiff. The latter did not make any application to the judge to have them brought into court. Yet, as the defendant might, by producing them, have put the question beyond doubt, and the other grounds have some weight, we think the new trial ought to have been granted.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and the case remanded for a new trial—the costs of the appeal to be borne by the defendant and appellee.

*Oakley* and *Thomas* for the plaintiff, *Baldwin* for the defendant.